LEMMON, Judge.
This automobile accident case, although tried in an unusual procedural posture, primarily involves the determination of the extent of plaintiff’s injuries attributable to the accident for which defendants admitted liability.
I
At the time of the accident plaintiff was in the course of his employment with Professional Roofing and General Contractors. Professional’s workmen’s compensation insurer paid weekly benefits and medical expenses, and when plaintiff filed this tort action against the third parties, Professional’s insurer intervened for all compensation and medical expenses paid or to be paid.
Just prior to trial plaintiff and defendants entered into a compromise, whereby defendants paid plaintiff a certain sum and agreed to hold plaintiff harmless for any sums due intervenor in this litigation.[1] In-tervenor did not join in or consent to the compromise, and in fact had sought to set the compromise aside.
At trial defendants resisted intervenor’s claim on the basis that some of plaintiff’s injuries and medical expenses were not caused by the accident. The trial court, without specifically determining which injuries were caused by the accident, awarded the full amount paid and to be paid, stating in reasons for judgment that intervenor is entitled to “all sums paid to the plaintiff under the Workmen’s Compensation Act”. On appeal defendants contend intervenor should have additionally been required to prove the injuries forming the basis of the payments under the compensation act were caused by the accident.
II
R.S. 23:1103 provides that in a suit against a third person the employer’s claim for compensation actually paid takes precedence over the employee’s claim, so that if the tort damages are insufficient to reimburse the employer, damages are assessed only in favor of the employer, and only when damages are more than sufficient to reimburse the employer is the excess assessed in favor of the employee. Thus, the third person’s total liability is determined by application of the principles used in fixing quantum of tort damages, and R.S. 23:1103 provides the priority of payment (as between the employer and employee) of the damages thus determined.
In the present case plaintiff’s sole claim against defendants was for the excess over the amount to which intervenor was entitled to reimbursement, and plaintiff could only compromise with defendants his claim for that excess. That compromise did not affect intervenor’s entitlement to reimbursement, provided the tort damages sus- *821 tamed by the plaintiff as a result of the accident are at least equal to such amount of reimbursement. Verbois v. Howard, 322 So.2d 110 (La.1975).
As does the plaintiff in any civil litigation, the employee and the employer seeking damages against a third person pursuant to R.S. 23:1101 have the burden jointly of proving the amount of tort damages attributable to the accident. If the employer is the only plaintiff (because the employee has not sued the third person, or has settled with the third person), the employer has the same burden of proof. Therefore, in the present case mere proof of payment of benefits and medical expenses does not establish intervenor’s right to reimbursement; intervenor also has to prove that the benefits and medical expenses it paid were due because of injuries caused by the accident.[2]
Ill
The central issue on appeal, therefore, is the sufficiency of intervenor’s evidence of a causal relationship between plaintiff’s injuries, for which intervenor has paid and is paying compensation benefits and medical expenses, and the accident for which defendants were liable.
The accident at issue occurred on February 15, 1974. At the time plaintiff was 21 years old, had a seventh grade education, and had been employed primarily as a truck driver and oil field laborer.
In December, 1972 plaintiff had sustained a back injury in a barge accident and in May 1973 had undergone a laminectomy at the L 4-5 interspace in Opelousas. Plaintiff’s back healed uneventfully, and the orthopedic surgeon discharged him in October, 1973, advising him to avoid heavy labor because of predisposition to recurrence of back injury.
In January, 1974 plaintiff went to work for Professional and performed climbing, lifting and other duties of a roofer with no problems. In the February 15, 1974 accident in Jefferson Parish the vehicle in which plaintiff was riding was struck violently in the rear by a tractor trailer.
After the accident plaintiff was examined in a hospital emergency room, where a lumbosacral sprain was diagnosed, in addition to plaintiff’s complaints of head, chest and pelvic pain. Plaintiff was hospitalized through February 19, during which time he complained of back pain, numbness in the legs, and nausea. He was then transferred to Opelousas, to be treated by the orthopedic surgeon who had treated his previous back injury. During his hospitalization there through March 1, he complained mainly of back and leg pain, although his anxiety, nausea and vomiting prompted the treating physician to call in a specialist in internal medicine for consultation as to plaintiff’s stomach complaints.
In outpatient treatment following the hospitalization the orthopedic surgeon found no clinical evidence to support plaintiff’s continued complaints, but since the complaints were consistent with an aggravation of the previous back injury, he referred plaintiff to a neurosurgeon in May, 1974. Neurological examinations in May and July were essentially negative, but when plaintiff’s complaints persisted and a September examination revealed some neurological deterioration, the neurosurgeon performed a myelogram and ultimately removed a herniated disc on the right side at L 4-5.
Upon being informed at trial that plaintiff had fallen in the shower when his leg gave way in August, 1974, the neurosurgeon admitted that the fall could have *822 caused the disc injury, but he was still inclined to attribute the injury to the February automobile accident, because plaintiff’s complaint had consistently been on the right side (the 1972 accident having caused injury on the left side at the same level) and because the complaints were compatible with disc injury although no objective symptomatology was produced. The orthopedic surgeon generally concurred in this analysis, although neither doctor could positively relate the disc injury to the accident.
On the issue of causation by the February, 1974 accident of plaintiff’s injuries for which intervenor paid benefits and medical expenses, we accord little weight to the trial court’s decision, because that court specifically did not rule on that factual issue. However, the evidence is in the record, and pursuant to Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975), we proceed to determine that factual issue on the basis of the record.
After the accident plaintiff immediately complained of back pain (on the right side) and numbness in the leg. His complaints were compatible with disc injury and continued until (as the neurosurgeon stated) “his clinical picture (became) clear enough to justify operation”. We conclude the evidence adequately supports a finding of causation by the automobile accident of the back injury requiring the second surgery and resulting in permanent disability.
During the hospitalization following the February, 1974 automobile accident, plaintiff was nervous and emotionally upset and complained of stomach pain, nausea and vomiting, which he had never before experienced. He was examined by an internal specialist, who diagnosed a probable duodenal ulcer, a diagnosis consistent with X-ray findings during gastronintestinal testing.
In November, 1974 plaintiff again developed nausea, vomiting and severe abdominal pain and was hospitalized by a general surgeon in the internist’s absence. The doctor diagnosed a hiatal hernia, esophagitis, and a deformed pylorus secondary to peptic ulcer disease. In December, 1974 the doctor surgically repaired the hiatal hernia (which he stated is caused by increased interabdo-minal pressure and can be caused by trauma), cut the vagus nerve (which causes the stomach to produce acid), and removed 40% of plaintiff’s stomach.
In February, 1975 plaintiff returned with the same complaints. The doctor determined the problem was caused by bile reflux into the stomach and performed a surgical revision of the bile flow.
In July, 1975 plaintiff again returned with stomach pain. The surgeon diagnosed gall stones and surgically removed the gall bladder. He testified that gall stones sometimes form as a consequence of a vagotomy and related the stone formation to his first surgery. The surgeon further testified that ulcers are related to stress, noting that plaintiff was an extremely nervous, recently married, young man who had just undergone his second back surgery and whose future earning capacity was in serious doubt. He attributed all three surgeries to the automobile accident.
There was contrary opinion evidence presented by an internal specialist produced by defendants. This physician, having examined plaintiff and reviewed all of the medical records, opined that a whiplash injury does not cause a hiatal hernia, which is traumatically caused only by direct blow to the abdomen (plaintiff was thrown beneath the dashboard and complained of chest pain in the emergency room, and he was a thin, young man who had never suffered stomach pain prior to the accident); that an ulcer, if related to the accident, would have developed much earlier than ten months after the accident (he admitted that an ulcer can develop, heal, and then recur under continued stress); and that gall stones are not caused by stress (the surgeon attributed the gall stones to the vagotomy, admitting there is medical controversy as to this causation). Although we note that reasonable men could differ in drawing a conclusion from this record, we conclude the overall evidence is sufficient to establish the probability that plaintiff’s ulcer and hiatal hernia were caused by the accident *823 and that the last two surgeries were also causally related.
As to disability, the surgeon opined that plaintiff could perform sedentary work, but had been disabled from lifting, bending and stooping throughout his treatment. The orthopedic surgeon and the neurosurgeon also testified it was inadvisable for plaintiff to ever attempt these activities or any heavy labor.
The overall evidence supports a finding that plaintiff was totally and permanently disabled within the contemplation of the compensation act and that his disability was causally related to defendant’s tort. The record further provides a basis for a tort judgment in excess of the total amount of compensation benefits and medical expenses paid or to be paid.
Accordingly, the judgment is affirmed.

AFFIRMED.

. At time of the January, 1977 trial intervenor had paid $9,815.00 in compensation benefits and $13,477.25 in medical expenses, and was continuing to pay compensation at the rate of $65.00 per week.

. To the extent of its claim for compensation and medical expenses actually paid, an employer is a plaintiff in a suit against a third person, whether or not the employee is also a party to that suit: The trial court’s reasons for judgment, reasoning that the intervenor should not have a greater burden after the compromise, concluded that the intervenor only had to prove “compensation benefits were paid to the plaintiff pursuant to the compensation act”. This stated burden of proof is correct only if the statement is clarified to declare that the inter-venor must prove the benefits were properly paid pursuant to the compensation act because of injuries resulting from a work-related accident.